## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RACHEL DAWSON,

*Plaintiff*,

*v.*

BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN,

*Defendant*.

Case No. 4:25-cv-12123-SDK-CI

Hon. Shalina D. Kumar

Hon. Mag. Curtis Ivy, Jr.

### DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Board of Regents of the University of Michigan hereby moves this

Court to dismiss Plaintiff Rachel Dawson's Amended Complaint, with prejudice, for

failure to state a claim upon which relief can be granted pursuant to Federal Rule of

Civil Procedure 12(b)(6).

The Amended Complaint fails to state a plausible claim upon which relief can

be granted. It does not state a claim under Title VI of the Civil Rights Act of 1964

because it contains no plausible allegation that the University of Michigan receives

federal funding specifically to fund employment opportunities or that the intended

beneficiaries of that federal funding have been discriminated against on the basis of

a protected characteristic. The Amended Complaint does not state a claim for

discrimination under Title VII of the Civil Rights Act of 1964 because it does not raise a plausible inference that the Defendant was motivated by discriminatory intent when it terminated Plaintiff. Nor does the Amended Complaint plausibly identify similarly situated employees who were treated more favorably than Plaintiff after engaging in sufficiently similar conduct. The Amended Complaint also fails to state a claim for retaliation under Title VII because it does not plausibly allege that Plaintiff engaged in a protected activity that was the cause of her termination.

Pursuant to Local Rule 7.1(a), counsel for Defendant met and conferred with counsel for Plaintiff via videoconference on November 17, 2025, regarding this motion. Plaintiff opposes the relief sought.

WHEREFORE, Defendant respectfully requests that the Court grant this motion and dismiss the Amended Complaint in its entirety with prejudice.

Dated: November 18, 2025

Respectfully submitted,

 /s/ J. Michael Huget
J. Michael Huget (P39150)
David P. Cowen (P88288)
**HONIGMAN LLP**
101 N. Main Street, Suite 850
Ann Arbor, MI 48104
mhuget@honigman.com
dcowen@honigman.com

Andrew S. Tulumello (D.C. 468351)
Chantale Fiebig (D.C. 487671)
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street NW, Suite 600
Washington, D.C.
Tel: (202) 682-7100
drew.tulumello@weil.com
chantale.fiebig@weil.com

Luna N. Barrington (N.Y. 4882304)
Nick Reade (N.Y. 5934252)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: 212.310.8000
luna.barrington@weil.com
nick.reade@weil.com

*Counsel for Defendant*
*Board of Regents of the University of*
*Michigan*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RACHEL DAWSON,

        *Plaintiff*,

      *v.*

BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN,

      *Defendant*.

Case No. 4:25-cv-12123-SDK-CI

Hon. Shalina D. Kumar

Hon. Mag. Curtis Ivy, Jr.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

ISSUES PRESENTED ........................................................................ v

CONTROLLING OR MOST RELEVANT AUTHORITY ..................................... vi

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ..................................................................... 2

     A.    Complaints of Antisemitism Rise at The University After October 7 ........................................................................ 2

     B.    The University Receives a Report of Dawson's Antisemitic Comments From the Anti-Defamation League ........................................................................ 4

     C.    The University Terminates Dawson For Her Misconduct .......... 6

LEGAL STANDARD .......................................................................... 8

ARGUMENT ................................................................................... 9

     I.    Dawson's Title VI Claim Must Be Dismissed ..................................... 9

     II.    Dawson Fails To State a Plausible Claim For Discrimination .......... 13

     A.    Dawson Fails to Plausibly Allege That She Was Terminated on The Basis of Her Race or Sex ......................... 14

     B.    Dawson Fails to Allege That Similarly Situated Employees Received More Favorable Treatment .................... 17

     III.    Dawson Fails To State a Plausible Claim for Retaliation .................. 21

     A.    Dawson Has Not Alleged She Engaged in Protected Activity ..................................................................... 21

     B.    Dawson Has Not Sufficiently Alleged Her Statements Caused Her Termination ....................................................... 23

CONCLUSION ................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Coll. of William & Mary*,
  245 F. Supp. 2d 777 (E.D. Va. 2003) ................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................8, 12

*Beard v. AAA of Mich.*,
  593 F. App'x 447 (6th Cir. 2014) ...............................................................23, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................8

*Bender v. Gen. Dynamics Land Sys., Inc.*,
  2020 WL 4366049 (E.D. Mich. July 30, 2020)...............................14, 18, 19, 23

*Cieslik v. Bd. of Educ.*,
  2021 WL 1172575 (N.D. Ill. Mar. 29, 2021) .............................................10–13

*In re Compuware Sec. Litig.*,
  386 F. Supp. 2d 913 (E.D. Mich. 2005) ............................................................12

*Direct Constr. Servs., LLC v. City of Detroit*,
  820 F. App'x 417 (6th Cir. 2020) ...............................................................3, 4, 6

*Fedder v. CEMS of Ohio, Inc.*,
  2024 WL 5319224 (6th Cir. Nov. 6, 2024) .......................................................15

*Hamade v. Valiant Gov't Servs., LLC*,
  807 F. App'x 546 (6th Cir. 2020) ......................................................................22

*Harrison v. Mich. Dep't of Health & Hum. Servs.*,
  2023 WL 4237580 (E.D. Mich. June 28, 2023) ..........................................17, 18

*Hatcher v. Hegira Programs, Inc.*,
  2020 WL 1083719 (E.D. Mich. Mar. 6, 2020)..................................................14

*Hawthorne-Burdine v. Oakland Univ.*,
  158 F. Supp. 3d 586 (E.D. Mich. 2016) ............................................................20

*HDC, LLC v. City of Ann Arbor*,
   675 F.3d 608 (6th Cir. 2012) ...............................................................................13

*Johnson v. City of Clarksville*,
   186 F. App'x 592 (6th Cir. 2006) ........................................................................10

*Johnson v. Cnty. of Nassau*,
   411 F. Supp. 2d 171 (E.D.N.Y. 2006) ................................................................11

*Johnson v. Ohio Dep't of Pub. Safety*,
   942 F.3d 329 (6th Cir. 2019) ..............................................................17, 19, 20

*Joseph v. Wentworth Inst. of Tech.*,
   120 F. Supp. 2d 134 (D. Mass. 2000) .................................................................10

*Kenney v. Aspen Techs., Inc.*,
   965 F.3d 443 (6th Cir. 2020) ..............................................................................21

*Meka v. Dayco Prods. LLC*,
   742 F. Supp. 3d 769 (E.D. Mich. 2024) ...................................................... 13-15

*Mitchell v. Toledo Hosp.*,
   964 F.2d 577 (6th Cir. 1992) ..............................................................................17

*Murphy v. Middletown Enlarged City Sch. Dist.*,
   525 F. Supp. 678 (S.D.N.Y. 1981) .....................................................................10

*Ogbonna-McGruder v. Austin Peay State Univ.*,
   91 F.4th 833 (6th Cir. 2024) ...............................................................................14

*Pittman v. Spectrum Health Sys.*,
   2014 WL 3809171 (W.D. Mich. Aug. 1, 2014) .................................................11

*Reynolds v. Sch. Dist. No. 1*,
   69 F.3d 1523 (10th Cir. 1995) ............................................................................12

*Roman v. Mich. Dep't of Hum. Servs.*,
   2010 WL 11519611 (E.D. Mich. Aug. 17, 2010)...............................................16

*Romeo Cmty. Schools v. United States Dep't of Health, Educ., &
   Welfare*, 438 F.Supp. 1021 (E.D. Mich. 1977) .................................................10

*Samuels v. Corr. Med. Servs., Inc.*,
  591 F. App'x 475 (6th Cir. 2015) ........................................................23

*Scheske v. Univ. of Mich. Health Sys.*,
  59 F. Supp. 3d 820 (E.D. Mich. 2014) ....................................... 21-23

*Seeger v. Cincinnati Bell Tel. Co., LLC*,
  681 F.3d 274 (6th Cir. 2012) ...............................................................15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) .............................................................................10

*Washington v. Sodecia Auto.*,
  2025 WL 848434 (E.D. Mich. Mar. 18, 2025) ......................................9

*Wax v. Trs. of the Univ. of Pa*,
  2025 WL 2483973 (E.D. Pa. Aug. 28, 2025) ......................................16

*Wershe v. City of Detroit*,
  112 F.4th 357 (6th Cir. 2024) ..............................................................25

*Wrenn v. Gould*,
  808 F.2d 493 (6th Cir. 1987) ...............................................................11

*Young v. CSL Plasma Inc.*,
  2016 WL 1259103 (E.D. Mich. Mar. 31, 2016) ...................................14

**Statutes**

42 U.S.C.A. § 2000d-3 ...............................................................................11

42 U.S.C.A. § 2000e .........................................................................*passim*

## <u>ISSUES PRESENTED</u>

1. Does the Amended Complaint fail to state a claim for employment discrimination under Title VI of the Civil Rights Act of 1964 where Plaintiff fails to allege the federal funding provided to Defendant is intended to provide employment or that the intended beneficiaries of the federal funding were discriminated against?

2. Does the Amended Complaint fail to state a claim for race or sex discrimination under Title VII of the Civil Rights Act of 1964 where Plaintiff fails to plead facts sufficient to raise a plausible inference that the Defendant intended to or did discriminate against her?

3. Does the Amended Complaint fail to plausibly allege, as necessary to state a claim for retaliation under Title VII of the Civil Rights Act of 1964, that Plaintiff's termination was caused by her objection to the Defendant's disciplinary process, rather than her own misconduct?

## <u>CONTROLLING OR MOST RELEVANT AUTHORITY</u>

**CASE LAW PERTAINING TO TITLE VI**
*Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987).
*Joseph v. Wentworth Inst. of Tech.*, 120 F. Supp. 2d 134 (D. Mass. 2000).
*Cieslik v. Bd. of Educ.,* 2021 WL 1172575 (N.D. Ill. Mar. 29, 2021).

**CASE LAW PERTAINING TO TITLE VII DISCRIMINATION**
*Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329 (6th Cir. 2019).
*Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833 (6th Cir. 2024).
*Meka v. Dayco Prods. LLC*, 742 F. Supp. 3d 769 (E.D. Mich. 2024).
*Bender v. Gen. Dynamics Land Sys., Inc.,* 2020 WL 4366049 (E.D. Mich. July 30, 2020).

**CASE LAW PERTAINING TO TITLE VII RETALIATION**
*Kenney v. Aspen Techs., Inc.*, 965 F.3d 443 (6th Cir. 2020).
*Samuels v. Corr. Med. Servs., Inc.*, 591 F. App'x 475 (6th Cir. 2015).
*Beard v. AAA of Mich.*, 593 F. App'x 447 (6th Cir. 2014).
*Scheske v. Univ. of Mich. Health Sys.*, 59 F. Supp. 3d 820 (E.D. Mich. 2014).

## **PRELIMINARY STATEMENT**

The University of Michigan ("the University") is home to more than 50,000 students from all over the state, nation, and world. It has a duty to ensure that its administrators foster intellectual curiosity in students and promote the University's culture of respect and compassion. University administrators—especially those working in diversity and inclusion-related roles—also must serve and support students of each and every background. The University does not tolerate discrimination in any form—and that includes antisemitism.

The University in this case received a credible report that Rachel Dawson, the head of its Office of Academic Multicultural Initiatives, told others at an academic conference that "the University is controlled by wealthy Jews," including "rich donors and Jewish board members [who] control [its] President," and that her office "do[es]n't work with Jews" because Jews are "wealthy and privileged and take care of themselves." The University retained outside counsel to investigate, and the investigation found the weight of the evidence substantiated the report. After receiving the results of the investigation and becoming aware of another instance of misconduct by Dawson on campus, the University terminated her employment.

Dawson now claims that the University terminated her—not for her unprofessional and antisemitic conduct—but because of her race or sex. That allegation is baseless. The University terminated Dawson because her misconduct

and poor judgment demonstrated that she would not, and could not, support students of all backgrounds.

Dawson's three claims against the University are legally invalid and should be dismissed. *First*, Dawson's Title VI discrimination claim fails because she has not alleged that the primary objective of the University's federal funding is to provide employment or that the intended beneficiaries of that alleged federal funding—students and researchers—have been discriminated against. *Second*, Dawson's claim for discrimination under Title VII fails because she has not raised a plausible inference that she was terminated on the basis of her race or gender, rather than based on her conduct, particularly because she has not identified any similarly situated counterparts who were treated more favorably. *Third,* Dawson's Title VII retaliation claim fails because she does not adequately allege that she engaged in protected activity that caused her termination. Accordingly, the Court should grant the University's motion to dismiss all claims with prejudice.

## STATEMENT OF FACTS

### A.      Complaints of Antisemitism Rise at The University After October 7

Following Hamas's October 7, 2023 attack on Israel, which included the murder of more than 1,200 civilians, the kidnapping of hundreds of others, and the rape and sexual assault of dozens of women, the University received an increase in

reports of antisemitic conduct.[1] In the week following Hamas's attack, crowds tore down posters of hostages abducted by Hamas and hundreds of students went to the home of then-University President Santa Ono to oppose the statement he released condemning Hamas's attack. *See* Ex. A.

These incidents received national news coverage and prompted the U.S. Department of Education under President Biden to investigate complaints of antisemitism, ultimately leading the department's Office of Civil Rights ("OCR") to allege that several dozen reported antisemitic incidents had "created a hostile environment for students, faculty, or staff" on campus.[2] The incidents identified by the OCR included (i) a protest on the University's campus in October 2023, shortly after October 7, in which participants called for "Nazi liberation," (ii) a March 2023 incident where a swastika was constructed out of push pins on a classroom bulletin board, and (iii) an act of vandalism in April 2024 in which someone spraypainted a

---

[1] *See* Ex. A, Miles Anderson, *School of Information will not punish board member who verbally assaulted Arab and Muslim students,* The Mich. Daily (Nov. 21, 2023), https://www.michigandaily.com/news/academics/school-of-information-will-not-punish-board-member-who-verbally-assaulted-arab-and-muslim-students/ ("Michigan Daily Article"). The Court may consider the article in adjudicating this motion because it is a matter of public record that Dawson has linked to in her Amended Complaint, *see* AC ¶ 57, PageID.132 n.4. *See Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 420 n.1 (6th Cir. 2020).

[2] *See* Ex. B (OCR Report) at 10. The Court may consider the OCR Report because it is both a matter of public record and a "letter[] that constitute[s] decisions of a governmental agency." *Direct Constr. Servs., LLC*, 820 F. App'x at 420 n.1.

swastika on a bench outside of the Hillel building near campus. *See id.* at 6, 9. In addition, a Jewish member of the University's Board of Regents was targeted by crowds at least three times, including one attack in which protestors threw jars of urine into his home and graffitied his car with the phrase "free Palestine."[3]

### B.   The University Receives a Report of Dawson's Antisemitic Comments From the Anti-Defamation League

Five months after Hamas's attack, Plaintiff Rachel Dawson attended an academic conference, in March 2024, in Philadelphia (the "March Conference"). *See* ECF No. 15 ("Amended Complaint" or "AC") ¶ 12, PageID.120. At the time, Dawson was the director of the University's Office of Academic Multicultural Initiatives ("OAMI"), which develops programming for students to "celebrate and showcase their identities and cultural traditions" in order to "nurture[] an intellectually and culturally diverse campus" and "encourage[] dialogue across campus." *See id.* ¶ 9, PageID.120; Ex. D, *About OAMI – What We Do*, OAMI, https://oami.umich.edu/what-we-do/ (last visited Nov. 17, 2025). Following a panel discussion at the March Conference in which Dawson asked a question and

---

[3] *See* Ex. C, Stephanie Saul & Vimal Patel, *D.E.I. Official at University of Michigan Is Fired Over Antisemitism Claim, Lawyer Says*, N.Y. Times (Dec. 12, 2024), https://www.nytimes.com/2024/12/12/us/university-of-michigan-dei-administrator-antisemitism.html. The Court may consider the article because Dawson linked to and incorporated it by reference in her Amended Complaint, AC ¶ 38 n.1, PageID.128. *See Direct Constr. Servs., LLC*, 820 F. App'x at 420 n.1.

identified herself as an employee of the University, two professors attending from other universities approached her to discuss antisemitism on the University's campus. *See* AC ¶¶ 12-15, PageID.120-21.

According to the professors, Dawson told them that her office "d[id]n't work with Jews" because they are "wealthy and privileged and take care of themselves." AC ¶ 29, PageID.123. Dawson reportedly also told the professors "[t]he University is controlled by wealthy Jews" and "donors and Jewish board members control the president and silence" students of Middle Eastern and North African descent. *Id.* Dawson acknowledges in her Amended Complaint that she discussed with the professors the issue of antisemitism at the University and the resources of the University's Jewish community, but she denies making the exact statements attributed to her. *See id.* ¶¶ 16-17, PageID.121.

Following the March Conference, the two professors filed a report with the Anti-Defamation League ("ADL"), a national civil rights organization focused on combatting antisemitism, expressing their concern about their conversation with Dawson. *See* AC ¶ 28, PageID.123. The ADL sent a letter to the University in August 2024 informing it of the professors' allegations. *See id.* ¶¶ 28-29, PageID.123. The University engaged Covington & Burling LLP ("Covington"), an outside law firm, to investigate the professors' claims. *See id.* ¶ 31, PageID.123.

As part of its investigation, Covington interviewed Dawson and the two

professors about their conversation at the March Conference and reviewed contemporaneous emails and communications. *See* AC ¶¶ 31-33, PageID.123-24. After completing their investigation, Covington concluded that the weight of the evidence supported the conclusion that Dawson made the statements attributed to her in the ADL's August 2024 letter. *See id.* ¶ 34, PageID.124.

### C.   The University Terminates Dawson For Her Misconduct

After receiving Covington's report, Dawson's supervisor, Tabbye Chavous, sent Dawson a letter explaining the investigation's conclusion. Chavous stated that the report "suggest[ed] the need for [Dawson] to consider judgment in determining effective approaches for engaging and representing [OAMI's] positions and work with diverse publics." Ex. E (Oct. 15 Chavous Letter);[4] AC ¶ 37, PageID.128. Chavous emphasized that, "[a]s the leader of OAMI, it [wa]s critical to both the success of the office and [Dawson's] success as its leader that all team members are explicit in conveying through words and actions that all students are welcomed and supported by OAMI." Ex. E. Chavous also advised Dawson that "multiple colleagues/offices" at the University had reported Dawson's unprofessional behavior during a campus event on August 28, 2024 (the "August Protest"), during

---

[4] The Court may consider Chavous's letter because Dawson incorporated it by reference in her Amended Complaint, *see* AC ¶ 37, PageID.128. *See Direct Constr. Servs., LLC*, 820 F. App'x at 420 n.1.

which she obstructed campus police as they attempted to disperse disruptive protestors. *Id.* Chavous issued Dawson a written warning and required her to attend leadership and anti-bias training. *See id.*

After Chavous issued her warning, on November 1, 2024, University Provost Laurie McCauley informed Dawson that the written warning was being rescinded because the University would be evaluating further discipline—potentially including termination—at a disciplinary review conference ("DRC"), due to Dawson's reported comments at the March Conference and her misconduct at the August Protest. *See* AC ¶¶ 41-42, 48, PageID.129-30. The University conducted a DRC on December 6, 2024. *See id.* ¶¶ 48-50, PageID.130. In advance of the DRC, Dawson submitted a written statement in which she asserted that "discrimination and bias may have informed the University's response and decision" to discipline her. *Id.* ¶ 51, PageID.130-31. She also expressed concern that "racial and gender biases can shape the interpretation of events and statements, especially for Black women in positions of authority." *Id.* And she claimed that "several non-Black employees of the University" who had been "the subject of similar complaints about their behavior" had not been terminated, but she did not provide any specific names or evidence to support this claim. *Id.*

On December 10, 2024, Dawson was terminated for her misconduct at the March Conference and at the August Protest, each of which the University found

demonstrated poor judgment and an inability to foster a welcoming environment for all University students in her role as director of OAMI. *See id.* ¶ 54, PageID.131.

Following her termination, Dawson filed a complaint, asserting claims for (1) violation of Title VI of the Civil Rights Act (Count I), (2) race and sex discrimination in violation of Title VII of the Civil Rights Act (Count II), and (3) retaliation in violation of Title VII (Count III). *See* ECF No. 1 ¶¶ 56-74, PageID.15-18. On October 14, 2025, the University filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* ECF No. 14. On October 24, 2025, Dawson filed her Amended Complaint, asserting the same three claims she asserted in her initial complaint. *See* AC ¶¶ 66-90, PageID.134-38. The University now moves to dismiss all of Dawson's claims with prejudice.

## **LEGAL STANDARD**

To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory statements" are insufficient to state a claim to relief. *Id.* A plaintiff alleging discrimination and retaliation under Title VII must "allege sufficient factual content" to permit the Court to "draw the reasonable inference" that the defendant

"discriminated against h[er] because of h[er] race [or sex] or retaliated against h[er] for opposing what [s]he believed to be discriminatory conduct." *Washington v. Sodecia Auto.*, 2025 WL 848434, at *3 (E.D. Mich. Mar. 18, 2025) (internal quotation marks omitted), *aff'd*, 2025 WL 2965835 (6th Cir. Oct. 21, 2025).

## ARGUMENT

Dawson fails to state a claim for any of the three causes of action. Dawson's Title VI claim fails because she does not plausibly allege that the primary purpose of the University's federal funding is to provide general employment or that the intended beneficiaries of the alleged funding—students and researchers—were discriminated against. Dawson's Title VII discrimination claim fails because she fails to allege *facts* that create a plausible inference that the University was motivated by discriminatory intent when it terminated her or that there are any similarly situated University employees who engaged in similar conduct but were treated more favorably. Her retaliation claim fails because she has not plausibly alleged that her statements to the University constituted protected activity or that such statements could have caused her termination, given that the University's disciplinary review of her misconduct was already well underway when she made such statements.

## I. Dawson's Title VI Claim Must Be Dismissed

Title VI prohibits an organization receiving federal funds from discriminating against an individual in his or her use of the organization's programs. *See e.g.*,

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll*., 600 U.S. 181, 290 (2023) (Gorsuch, J., concurring); *Johnson v. City of Clarksville*, 186 F. App'x 592, 595-96 (6th Cir. 2006). Only the intended beneficiary of the federal funds may bring a Title VI claim. *See Cieslik v. Bd. of Educ.*, 2021 WL 1172575, at *2 (N.D. Ill. Mar. 29, 2021). Because federal funds provided to schools are intended "to provide aid to students, children and their families," courts routinely dismiss Title VI claims brought by school *employees* who allege they have been the subject of the discrimination. *Murphy v. Middletown Enlarged City Sch. Dist.,* 525 F. Supp. 678, 709 (S.D.N.Y. 1981) (dismissing Title VI discrimination claim because federal funds were not intended to "provid[e] employment" to the teacher bringing the claim). This is because "Congress never intended that [Title VI] be applicable to [] discrimination in the employment context." *Allen v. Coll. of William & Mary,* 245 F. Supp. 2d 777, 785 (E.D. Va. 2003) (citing *Romeo Cmty. Schs. v. U.S. Dep't of Health, Educ., & Welfare*, 438 F. Supp. 1021, 1029 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979)).  Title VI is not a vehicle for general *employment* discrimination claims. *See id.*

Therefore, to prevail on a Title VI claim under a theory of employment discrimination, an employee of a school must overcome the presumption that the federal funds that the "educational institution[] received . . . [were] designed to create jobs and not to aid education." *Joseph v. Wentworth Inst. of Tech.,* 120 F.

Supp. 2d 134, 138–39 (D. Mass. 2000) (granting defendant summary judgment on Title VI claim because plaintiff did not show federal funds were designed to promote employment, rather than aid education). Specifically, to show that she is an intended beneficiary of the University's federal funding, Dawson must plausibly allege that "a primary objective" of such funding "is to provide employment." 42 U.S.C.A. § 2000d-3; *Cieslik*, 2021 WL 1172575, at *3. Establishing this primary objective is necessary to plausibly allege the "logical nexus" between the federal funding and the plaintiff's employment. *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 175-77 (E.D.N.Y. 2006). Where, as here, the plaintiff fails to allege that a primary objective of her employer's federal funding was to provide employment, or that she was an intended beneficiary of that funding, courts routinely dismiss Title VI claims premised on a theory of employment discrimination. *See Wrenn v. Gould*, 808 F.2d 493, 497 (6th Cir. 1987) (affirming dismissal of Title VI employment discrimination claim where defendant's federal funding "d[id] not have a primary purpose of providing employment"); *Pittman v. Spectrum Health Sys.,* 2014 WL 3809171, at *4 (W.D. Mich. Aug. 1, 2014) (granting motion for judgment on the pleadings on Title VI claim where plaintiff failed to allege the entity received federal funding for the purpose of providing employment), *aff'd*, 612 F. App'x 810 (6th Cir. 2015); *Cieslik*, 2021 WL 1172575, at *3.

Dawson fails to state a Title VI claim because she does not, and cannot,

plausibly assert that the primary purpose of the University's federal funding is to provide employment. Although she uses "talismanic language" that the "primary objective of much of" the University's federal funding is to "create and maintain jobs," that is a conclusory allegation unsupported by facts and cannot salvage the claim. *See In re Compuware Sec. Litig.,* 386 F. Supp. 2d 913, 918 (E.D. Mich. 2005) ("Plaintiffs must do more than use talismanic language to cure an otherwise inadequately pled complaint."); *Iqbal*, 556 U.S. at 678 (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" (citations omitted)).

Moreover, Dawson's allegations refer only to *students* who receive "federal financial aid and Pell grants" and "faculty [and] *researchers* [who] . . . receive grants" for their academic work. AC ¶ 69, PageID.135 (emphasis added). These factual allegations demonstrate that the "primary objective" of the University's federal funding is to assist students with tuition and support academic research projects, not to create jobs generally. *See Cieslik*, 2021 WL 1172575, at *3; *see also Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) (federal funding was provided to school to fund programming, not to create employment, even if some teachers were paid through grants).

Dawson tries to concoct an alternative theory that the University violated Title VI by discriminating against *students* who "lost access" to her services. AC ¶ 55, PageID.131. But this theory also falls flat. As the intended beneficiaries of the

federal funding of the University's programming, only *these students*—not Dawson—could assert a Title VI claim for facing discrimination. *See Cieslik*, 2021 WL 1172575, at *2. Moreover, Dawson has not alleged that any students lost access to OAMI because of the students' race, color, or national origin. Dawson thus fails to allege how students were discriminated against on account of her termination. *Id.* at *3 (dismissing Title VI claim where teachers failed to allege their terminations discriminated against students). Absent such allegations, Dawson fails to state a Title VI claim. *Id*.

## II. <u>Dawson Fails To State a Plausible Claim For Discrimination</u>

The Court should dismiss Dawson's discrimination claim because she does not plausibly allege that the University terminated her due to her race or sex. To state a claim for Title VII discrimination, a plaintiff must "plead sufficient facts from which this Court, informed by its judicial experience and common sense, could draw the reasonable inference that [the defendant] discriminated against her based on a protected characteristic." *Meka v. Dayco Prods. LLC,* 742 F. Supp. 3d 769, 773 (E.D. Mich. 2024) (citation omitted). "[C]onclusory allegations of discriminatory intent without supporting factual allegations do[] not sufficiently show entitlement to relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012).

Courts in the Sixth Circuit routinely dismiss discrimination claims that lack plausible allegations that the employee faced adverse action "because of her race [or

sex] or that she was otherwise similarly situated to" other employees outside of her protected classes who received more favorable treatment. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir. 2024) (affirming dismissal of discrimination claim where fired plaintiff failed to allege she was similarly situated to employee outside of her protected class who replaced her), *cert. denied*, 144 S. Ct. 2689 (2024); *Bender v. Gen. Dynamics Land Sys., Inc.,* 2020 WL 4366049, at *1 (E.D. Mich. July 30, 2020) (same). Here, the Court should dismiss Count II because Dawson alleges no facts that allow the Court to infer that race or sex factored into the University's decision to terminate her. *See Meka,* 742 F. Supp. 3d at 775.

### A.   Dawson Fails to Plausibly Allege That She Was Terminated on The Basis of Her Race or Sex

In alleging she was terminated on the basis of her race or sex, Dawson relies on the written statement she submitted before the DRC, in which she claimed that racial and gender biases colored Covington's investigation and that stereotypes about Black women informed the University's response. AC ¶ 51, PageID.130-31. But Dawson's "subjective belief" that race or sex motivated her termination is legally insufficient to sustain her claim. *See Young v. CSL Plasma Inc.*, 2016 WL 1259103, at *5 (E.D. Mich. Mar. 31, 2016) (dismissing complaint lacking facts indicating discrimination), *aff'd*, 2017 WL 5157230 (6th Cir. May 26, 2017); *see also Hatcher v. Hegira Programs, Inc.*, 2020 WL 1083719, at *5 (E.D. Mich. Mar. 6, 2020) (same). Without alleging any *specific facts* to support her subjective belief

that race or sex motivated the University's decision to terminate her, the Court cannot "reasonably infer discriminatory intent." *Meka*, 742 F. Supp. 3d at 774.

To the contrary, the only plausible inference the Court can draw from the Amended Complaint is that Dawson was terminated for her conduct at the March Conference and the August Protest—not because of her race or gender. *Fedder v. CEMS of Ohio, Inc.*, 2024 WL 5319224, at *4 (6th Cir. Nov. 6, 2024) (affirming dismissal of Title VII discrimination claim where complaint revealed termination resulted from "unprofessional behavior"); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285–86 (6th Cir. 2012) (no discrimination inferred where employer makes "a reasonably informed and considered decision" based on investigation into employee misconduct before taking an adverse employment action).

The Amended Complaint itself includes the key facts that negate an interference of discriminatory animus. Dawson acknowledges that the University received a report that she had made blisteringly antisemitic comments at a professional conference (*i.e.*, "[t]he University is controlled by wealthy Jews" and her office "do[es]n't work with Jews"). AC ¶¶ 15, 28-29, PageID.121-23. She also acknowledges that Covington investigated the allegations and concluded that the "weight of the available evidence support[ed] the conclusion that *[she] made the [antisemitic] statements*." *Id.* ¶¶ 31-34, PageID.123-24 (emphasis added). She agrees that the University then held a formal DRC where it considered her conduct

at the March Conference and the August Protest, Covington's report, and the statements submitted by both Dawson and Chavous before ultimately terminating Dawson. *See id.* ¶¶ 34-37, 48-54, PageID.124-25, 130-31. Taking these allegations as true, the Amended Complaint establishes that the University terminated Dawson because she had engaged in antisemitic and unprofessional behavior to an extraordinary degree—not because of her race or sex. Dawson does not offer a single factual allegation to "show[] that her race [or gender] was part of her disciplinary hearing . . . or that [they] had anything to do with [terminating] her." *Wax v. Trs. of the Univ. of Pa*, 2025 WL 2483973, at *7 (E.D. Pa. Aug. 28, 2025).

Dawson also alleges that the University's deviation from typical disciplinary procedures, *see* AC ¶¶ 31, 36, 45, Page.ID.123, 125-29, reflects race and sex discrimination because it involved an outside investigation into her conduct. But thoroughly investigating the ADL's allegations does not give rise to an inference of race or sex discrimination, particularly given the inflammatory and inexcusable nature of her reported remarks. *See Roman v. Mich. Dep't of Hum. Servs.*, 2010 WL 11519611, at *6-7 (E.D. Mich. Aug. 17, 2010). Moreover, an employer's "deviation from its own policies does not support a discrimination charge" absent additional indication that the deviation *itself* occurred because of an employee's race or sex. *Id.* at *7 n.7. Even accepting the allegations as true, Dawson fails to plausibly allege that the University deviated from its disciplinary process *because* of her race or sex

16

rather than due to the antisemitic remarks Dawson made as *the leader of OAMI*, coupled with her conduct at the August Protest. *See id.*

### B. Dawson Fails to Allege That Similarly Situated Employees Received More Favorable Treatment

Reinforcing this conclusion is Dawson's failure to identify other employees of the University who were situated similarly to her but received more favorable treatment. To sustain a discrimination claim, a plaintiff must allege that she was similarly situated "in all [] relevant respects" to an employee of a different race or gender. *See Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (citation omitted). The other employee(s) "must have dealt with the same supervisor, have been subject to the same standard[,] and have engaged in the same conduct." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Moreover, Dawson must specifically allege details such as the employees' "names, ages, or qualifications" or "examples of how their treatment differed." *Harrison v. Mich. Dep't of Health & Hum. Servs.*, 2023 WL 4237580, at *16–17 (E.D. Mich. June 28, 2023) (citation omitted).

Dawson does not plausibly allege that any of the individuals identified in her Amended Complaint is similarly situated to her. As an initial matter, for all but one alleged comparator, she does not identify them by *name*. Instead, she refers to seven people generically by title or department without specifying their backgrounds,

qualifications, or the context of their alleged conduct, as necessary to allow the Court to assess the plausibility of their similarity to her.

Yet even the allegations in the Amended Complaint show that these seven anonymous individuals were not similarly situated to Dawson.  Each of them—including a urology professor, a medical school employee, and a compliance officer—has a different title than Dawson and works in a completely different department. *See* AC ¶¶ 57-65, PageID.132-34. Thus, Dawson fails to allege that they "occupied the same position" with the same "conditions of employment" as she did, *see Bender,* 2020 WL 4366049, at *6, or that they were "subject to the same standards or had similar job responsibilities." *Harrison*, 2023 WL 4237580, at *17. Rather, Dawson held a role different from her alleged comparators with materially different duties: unlike the alleged comparators, facilitating constructive dialogue among students of diverse backgrounds and showcasing their cultural traditions were her singular, essential responsibilities as OAMI's director. *See* Ex. D.

In addition, none of the seven was in the same reporting line as Dawson. While Dawson implies that these individuals are similarly situated because they were "subject to discipline by" Provost McCauley, *see* AC ¶¶ 58-65, PageID.132-34, none is alleged to have reported directly to Tabbye Chavous, as Dawson did, *see id.* ¶ 35, PageID.124. Dawson's failure to allege that any of these employees "dealt with the same supervisor" is fatal to her claim. *Harrison*, 2023 WL 4237580, at *17.

18

Moreover, none of these seven is alleged to have engaged in substantially the same *conduct* as Dawson did. She points primarily to two professors "accused of making comments perceived to be offensive about the death of Charlie Kirk," and, upon information and belief, other employees who *may* have also made offensive comments about Kirk. AC ¶¶ 59-61, PageID.132-33. But Dawson does not specify *what* those individuals said or whether those accusations were even substantiated. There can thus be no inference that their conduct was of "comparable seriousness" without knowing what they allegedly said, in what context, or whether they actually made such comments. *Ohio Dep't of Pub. Safety*, 942 F.3d at 331; *Bender*, 2020 WL 4366049, at *6 (plaintiff must allege that comparable employees "engaged in the same conduct" to survive dismissal).

Dawson's generalized references to other anonymous employees accused of harassing a colleague, abusing other University employees, making bigoted comments on social media, and referring to a subordinate in disparaging terms, *see* AC ¶¶ 58, 62-64, PageID.132-34, also fail because she does not allege whether the accusations had been substantiated or whether, like her, these employees had been accused of *additional* misconduct of comparable seriousness, such as Dawson's obstruction of campus police at the August Protest. And, while Dawson alleges that one University employee engaged in conduct at the August Protest similar to hers, she does not allege that this person *also* made blatantly antisemitic remarks about

members of the University community. *See id.* ¶ 65, Page.ID 134. Dawson thus fails to allege that any of these employees' behavior is at all comparably serious to her two serious and substantiated instances of misconduct.

Dawson identifies only one person by name: Carin Ehrenberg, whom Dawson refers to as a "non-Black member of the University community" whom the University failed to punish despite "calling students 'terrorists', 'rapists,' and 'murderers.'" AC ¶ 57, PageID.132. But she cannot point to Ehrenberg to support her claim because, by Dawson's own admission, Ehrenberg *is not an employee of the University* but a clinical psychologist in private practice who sits on a voluntary advisory board of the University's School of Information. *See id.*; Ex. A. Because Ehrenberg is not a University employee, she is not similarly situated to Dawson. *See Ohio Dep't of Pub. Safety*, 942 F.3d at 331-32. And, because Ehrenberg is a woman and a member of Dawson's own protected class, Dawson's theory of sex discrimination fails. *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 605 (E.D. Mich. 2016), *aff'd*, 2016 WL 11854487 (6th Cir. Nov. 3, 2016).

In sum, because Dawson fails to plausibly allege that any individual is similarly situated to her, the Court should dismiss Count II for her failure to plausibly allege that the University terminated her because of her race or sex, rather than based on her two substantiated instances of misconduct and their incompatibility with her essential job responsibilities at the University. *See Meka,* 742 F. Supp. 3d at 773.

**III.**      <u>**Dawson Fails To State a Plausible Claim for Retaliation**</u>

The Court should dismiss Dawson's retaliation claim because she fails to allege that she engaged in any protected activity that *caused* her termination. To state a claim for retaliation under Title VII, Dawson must plausibly allege (1) she engaged in activity protected under Title VII; (2) the University knew of her protected activity; (3) which was the *but-for* cause; (4) of an adverse employment action. *See Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).

### A.      Dawson Has Not Alleged She Engaged in Protected Activity

Dawson has not plausibly alleged that she engaged in protected activity under Title VII, which prohibits an employer from retaliating against employees for opposing its own discriminatory employment practices. *See Scheske v. Univ. of Mich. Health Sys.*, 59 F. Supp. 3d 820, 826-27 (E.D. Mich. 2014). Although she does not state so explicitly, the only action Dawson took which even arguably constitutes protected activity was her submission of a written statement in the disciplinary process. *See AC* ¶¶ 50-52, PageID.130-31.[5]

Under Title VII, two types of activity are protected from retaliation: (1) "participation," in which an employee "participate[s] in an investigation,

---

[5] Dawson does not allege that her comments at the March Conference or August Protest are First Amendment-protected speech for which the University retaliated. In any event, such speech is not protected activity under Title VII because it is not opposition to or participation in an investigation into the University's employment practices. *See Scheske*, 59 F. Supp. 3d at 827.

proceeding, or hearing" regarding her employer's discriminatory practices pursuant to a pending charge by the Equal Opportunity Employment Commission ("EEOC"), or (2) "opposition," in which she "oppose[s] any practice" of her employer made unlawful by Title VII. *Scheske*, 59 F. Supp. 3d at 826-27; *Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 550 (6th Cir. 2020) (participation theory applies only if plaintiff participates in an "investigation [that] occurs pursuant to a pending [EEOC] charge").  Because Dawson does not allege that she participated in any ongoing investigation into the *University's* own discriminatory misconduct pursuant to an EEOC charge, she may only claim protected activity by alleging she "opposed" the University's unlawful conduct by complaining to a University official about it. *Scheske*, 59 F. Supp. 3d at 826-27; *Hamade*, 807 F. App'x at 550. To do so, Dawson must allege she "ma[d]e it clear [to the University] that she [was] opposing discrimination" at the University and cannot have made only a "vague charge of discrimination." *Scheske*, 59 F. Supp. 3d at 827 (citation omitted).

Dawson appears to allege that the written statement she submitted to the University before the DRC constituted protected activity because she wrote that "several non-Black employees of the University who ha[d] been the subject of similar complaints" had not been terminated, and that bias had informed the University's actions. *See* AC ¶¶ 50-52, PageID.130-31. But that statement lacks the specificity required to constitute protected activity under Title VII. *See Scheske*, 59

F. Supp. 3d at 827. It does not set forth particular facts describing any unlawful, discriminatory conduct she observed. *Samuels v. Corr. Med. Servs., Inc.*, 591 F. App'x 475, 485 (6th Cir. 2015) (statement to employer that only "vaguely asserts" that plaintiff faced discrimination is insufficient to constitute protected activity to sustain a retaliation claim).

Rather, Dawson's written statement (viewed in the light most favorable to her) reflects her view that one professor she spoke with at the March Conference may have harbored bias consistent with stereotypes Black women face in society. *See* AC ¶ 51, PageID.130-31. Those observations are *not* complaints about a discriminatory *employment* practice undertaken by the University. They are not a specific complaint about discrimination *by the University* at all. Thus, they cannot constitute protected activity under Title VII. *See Scheske*, 59 F. Supp. 3d at 826-27

## B.    Dawson Has Not Sufficiently Alleged Her Statements Caused Her Termination

Even if Dawson adequately pleaded that the statement she submitted before the DRC constituted protected activity, she fails to plausibly allege that it caused her termination. To plead causation, Dawson must plausibly allege that the University would not have terminated her absent her written statement. *See Bender*, 2020 WL 4366049, at *8; *see also Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014) (causation not established where plaintiff failed to show that "but for his

allegations of discrimination, he would not have been terminated"). The Amended Complaint shows the statement was not the but-for cause of her termination.

Taking the allegations as true, the timing of the University's actions shows that it did not terminate Dawson because of her written statement. By the time she submitted the statement, the University had already hired Covington to investigate her conduct, received a report from Covington substantiating the allegations against her, and advised her that it was considering termination as a result of her conduct at both the March Conference and the August Protest. *See* AC ¶¶ 27-34, 41-43, PageID.123-24, 129. Each of these events occurred *more than a month before* Dawson submitted her statement. *See id.* ¶¶ 48-51, PageID.130-31. The timing negates the suggestion that her written statement before the DRC *caused* her termination. *See Beard*, 593 F. App'x at 451 (no causation where employer was already "investigat[ing] [] complaints against [plaintiff] with the same level of scrutiny before . . . his protected activity" and he was thus "well on the path to termination . . . when he first accused [the employer] of discrimination"). Accordingly, the Court should dismiss Count III for failure to state a plausible theory of causation.

## **CONCLUSION**

The Amended Complaint should be dismissed in its entirety, with prejudice. Dawson has already amended her complaint after reviewing the University's first

24

motion to dismiss (ECF No. 14) and the inability to cure its defects demonstrates "the complaint could not be saved by [further] amendment." *See Wershe v. City of Detroit*, 112 F.4th 357, 372 (6th Cir. 2024).

Dated: November 18, 2025                    Respectfully submitted,

                                             /s/ J. Michael Huget
                                            J. Michael Huget (P39150)
                                            David P. Cowen (P88288)
                                            **HONIGMAN LLP**
                                            101 N. Main Street, Suite 850
                                            Ann Arbor, MI 48104
                                            mhuget@honigman.com
                                            dcowen@honigman.com

                                            Andrew S. Tulumello (D.C. 468351)
                                            Chantale Fiebig (D.C. 487671)
                                            **WEIL, GOTSHAL & MANGES LLP**
                                            2001 M Street NW, Suite 600
                                            Washington, D.C.
                                            Tel: (202) 682-7100
                                            drew.tulumello@weil.com
                                            chantale.fiebig@weil.com

                                            Luna N. Barrington (N.Y. 4882304)
                                            Nick Reade (N.Y. 5934252)
                                            **WEIL, GOTSHAL & MANGES LLP**
                                            767 Fifth Avenue
                                            New York, NY 10153
                                            Telephone: 212.310.8000
                                            luna.barrington@weil.com
                                            nick.reade@weil.com

                                            *Counsel for Defendant*
                                            *Board of Regents of the University of Michigan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification of such filing to all counsel of record.

*/s/ J. Michael Huget*
J. Michael Huget
