UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RACHEL DAWSON,<br><br>       *Plaintiff*,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN,<br><br>       *Defendant*. | Case No. 4:25-cv-12123-SDK-CI<br><br>Hon. Shalina D. Kumar<br><br>Hon. Mag. Curtis Ivy, Jr. |

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

J. Michael Huget (P39150)
David P. Cowen (P88288)
**HONIGMAN LLP**
101 N. Main Street, Suite 850
Ann Arbor, MI 48104
mhuget@honigman.com
dcowen@honigman.com

Luna N. Barrington (N.Y. 4882304)
Nick Reade (N.Y. 5934252)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: 212.310.8000
luna.barrington@weil.com
nick.reade@weil.com

Andrew S. Tulumello (D.C. 468351)
Chantale Fiebig (D.C. 487671)
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street NW, Suite 600
Washington, D.C.
Tel: (202) 682-7100
drew.tulumello@weil.com
chantale.fiebig@weil.com

*Counsel for Defendant Board of Regents of the University of Michigan*

## INTRODUCTION

The University terminated Dawson for her anti-Semitic statements and professional misconduct. In the Opposition, Dawson rightly abandons her claim under Title VI. ECF No. 19 ("Opp.") at 21, PageID.245. But she says her Title VII claims should survive because the University has "fair notice" of her claims, Opp. at 2, PageID.226, and because the University cherry-picks allegations in the Amended Complaint, Opp. at 1, PageID.225. Both arguments are meritless. Dawson's Opposition asks this Court to credit unsupported inferences that are contradicted by her own allegations. It is well-settled that a plaintiff can plead herself out of court by alleging facts that defeat the plausibility of her claims. *Bright v. Gallia Cnty.*, 753 F.3d 639, 655 (6th Cir. 2014).  That is precisely the case here.

## ARGUMENT

**I.      Dawson Misconstrues the Standards in the MTD.**

Dawson argues that the University misinterprets the pleading requirements that apply to her claim. Opp. at 8, 10–11, PageID.232, 234–35. But the University's motion relies on black-letter law. And the legal standard cited by the University is materially identical to the standard set forth in the case Dawson relies on. *Compare* ECF No. 17 ("MTD") at 13, PageID.165 *with Mustafa v. Ford Motor Co.*, 2025 WL 2720988, at *2 (6th Cir. Sept. 24, 2025) (same). Dawson disregards that factually unsupported allegations are not credited at Rule 12(b)(6), and that well-pleaded

factual allegations must state a plausible claim for relief—not merely a possible one. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–80, 683 (2009); *Han v. Univ. of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013); *Oldenburg-McGee v. Regents of Univ. of Mich.*, No. 25-cv-11288, slip op. at 5 (E.D. Mich. Nov. 20, 2025) (Kumar, J.).[1]

### A. Dawson's Discrimination Claims Fail.

Dawson's Title VII discrimination claim must be dismissed under this standard. The only express allegations about Dawson's race involve her statement to the DRC. Opp. at 18, PageID.242. Dawson says the statement accused the University of harboring "negative stereotypes" and "bias." *Id.* at 18, PageID.242. But she never alleges *facts* to support that subjective belief. Her opposition appears to suggest that hiring a law firm to conduct a factual investigation was a departure from precedent, *see* Opp. at 5, PageID.229, but she never alleges that the University retained Covington as an act of racial discrimination—an assertion that would be implausible in any event. She simply alleges that she had "subjective beliefs" about the University's conduct, which is insufficient to state a claim as matter of law. *Schaefer v. Potter*, 2007 WL 1153013, at *14 (E.D. Mich. Apr. 17, 2007).

The Opposition also points to a letter her immediate supervisor wrote noting

---

[1] Dawson also alleges that the Court cannot consider Exhibit B. Opp. at 8–10, PageID.232–34. But courts can take judicial notice of public government records. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

2

concern "about equity in process." Opp. at 5, PageID.229. But nothing in that letter suggests that Dawson was treated differently *because of* her race or sex. *Hatcher v. Hegira Programs, Inc.*, 2020 WL 1083719, at *4–5 (E.D. Mich. Mar. 6, 2020). It focuses on the actions of the two professors Dawson spoke with at the March conference. ECF No. 15 ("AC") ¶¶ 36, 51, PageID.126–27, 131. Nowhere does that letter connect how allegedly biased comments from those professors, who are not affiliated with the University, reflect discriminatory animus *by the University.*

Dawson also points to comments from Regent Bernstein that Dawson's conduct warranted termination. Opp. at 1, 6, 12, PageID.225, 230, 236. This is misdirection. The Amended Complaint does not plead a single fact suggesting that Regent Bernstein took action based on Dawson's race or sex—as opposed to a concern that the University's leader of the Office of Academic Multicultural Initiatives harbored antisemitism, *see* AC ¶ 39, PageID.128. *See Roman v. Mich. Dep't of Hum. Servs.*, 2010 WL 11519611, at *6–7 (E.D. Mich. Aug. 17, 2010).

Dawson may well believe that Covington reached the wrong conclusion or that she should have received discipline short of termination. But under Title VII, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 886 (6th Cir. 2020) (citation omitted). Dawson has not pleaded facts sufficient to raise

3

an inference of racial or sex-based animus.

The rest of Dawson's Opposition defends her comparators. Opp. at 13–17, PageID.237–41. While Dawson is not required to state a prima facie case under *McDonnell Douglas* at this stage, courts regularly consider such allegations when deciding motions to dismiss, especially if, under the facts alleged, a plaintiff fails to show entitlement to relief. *Meka v. Dayco Prods. LLC*, 742 F. Supp. 3d 769, 774 (E.D. Mich. 2024).[2]

As the cases Dawson relies on show, a plaintiff can rely on comparator evidence to support a Title VII discrimination claim only if she is "similarly situated in all relevant aspects" to the relevant comparator. *Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 861 (6th Cir. 2025).[3] Otherwise, it is not possible to draw an inference that race or sex-based animus is at work. But the individuals Dawson alludes to do not remotely have similar job responsibilities to Dawson and did not engage in the same conduct as Dawson. *See* MTD at 17–20, PageID.169–72;

---

[2] *See also Wollor v. Collins Aerospace Headquarters*, 2024 WL 25097, at *4–7 (W.D. Ky. Jan. 2, 2024); *Mustafa*, 2025 WL 2720988, at *5; *Harrison v. Mich. Dep't of Health & Hum. Servs.*, 2023 WL 4237580, at *10 (E.D. Mich. June 28, 2023); *Swope v. City of Dearborn Heights*, 2024 WL 5103409, at *3 n.2 (E.D. Mich. Dec. 13, 2024); *see Oldenburg-McGee*, slip op. at 9–11.

[3] *See also Mustafa*, 2025 WL 2720988, at *4; *Horne v. Pentastar Aviation, LLC*, 2024 WL 1607017, at *9–10 (E.D. Mich. April 12, 2024); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

*Oldenburg-McGee*, slip op. at 10–11. Most notably, Dawson's toxic comments demonstrated her inability and unwillingness to perform a core function of her job—to "celebrate and showcase [the] identities and cultural traditions" of the "full community." MTD, Ex. D, PageID.215; MTD, Ex. E, PageID.218. Although Dawson need not point to a comparator that has her *exact* same job, Dawson does need to point to someone who is similar to her "in all [] relevant respects"—and she has not done so. *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019).

Here, Dawson's job responsibilities are critical. It is self-evident that the University cannot tolerate a diversity employee who says "[t]he University is controlled by wealthy Jews" and that her office "do[es]n't work with Jews." AC ¶ 29, PageID.123. Her unidentified, vaguely described comparators did not fundamentally repudiate the fundamental, *sine quo non* duty of their job. *See id.* ¶¶ 57–65, PageID.132–34. Dawson asserts (with no facts) that her role is unique, making it impossible for her to identify true comparators, Opp. at 15–16, PageID.239–40, but the University employs more than 50,000 people and a significant number of employees are responsible for diversity and inclusion initiatives. Yet Dawson points to no one who has *ever* been treated differently for the same misconduct (which was *both* her conduct at the conference and at the August protest). MTD at 7–8, PageID.159–60.

## II. Dawson's Retaliation Claim Fails

Dawson's Title VII retaliation claim also should be dismissed. Dawson says that she has adequately pleaded a claim for retaliation because her statement to the DRC constitutes protected activity and that her subsequent termination entitles her to an inference that her statement to the DRC was the but-for cause of her termination. *See* Opp. at 17–21, PageID.241–45. The Amended Complaint does not plausibly support that inference.

Dawson relies exclusively on the timing of her termination following her DRC statement to support the causal connection between her "protected activity" and her termination. Opp. at 20, PageID.244. But the law precludes such an unsupported inference. It is well-settled that "employees who see the proverbial writing on the wall that they are about to be fired should not be able to use Title VII protections to insulate themselves from adverse employment actions that were previously contemplated." *Tharp v. Apel Int'l, LLC*, 2022 WL 2981770, at *3 (6th Cir. July 28, 2022) (citation omitted); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013) (same). Thus, when employers "proceed[] along lines previously contemplated, though not yet definitively determined, *[it] is no evidence whatever of causality*." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (emphasis added); *see also Hervey v. Cnty. of Koochiching,* 527 F.3d 711, 723 (8th Cir. 2008).

Here, the University informed Dawson that it would convene a DRC and

6

could terminate her a month *before* Dawson submitted her statement. *See* AC ¶¶ 27, 41, 48, 50, PageID.123, 129, 130. By the time of the DRC, an outside law firm had investigated her conduct and made findings. *Id.* ¶ 34, PageID.124. The University could not have fired her *because of* her DRC statement—she was already well down the path to discipline. On the facts she alleges, Dawson is not entitled to an inference that protected activity was the cause of her termination. *See Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014). And she is wrong to say this cannot be resolved at 12(b)(6). *See* Opp. at 20–21, PageID.244–45; *Bender v. Gen. Dynamics Land Sys., Inc.*, 2020 WL 4366049, at *8 (E.D. Mich. July 30, 2020).

## CONCLUSION

Dawson already amended once after seeing the University's first motion to dismiss. She has now abandoned her Title VI claim, and this second effort to sustain her Title VII case fails. Dawson seeks to create race-based and sex-based animus where there is none (apart from her speculative beliefs). The Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: January 16, 2026                    Respectfully submitted,

                                        */s/ J. Michael Huget*
                                        J. Michael Huget (P39150)
                                        David P. Cowen (P88288)
                                        **HONIGMAN LLP**
                                        101 N. Main Street, Suite 850
                                        Ann Arbor, MI 48104
                                        mhuget@honigman.com
                                        dcowen@honigman.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification of such filing to all counsel of record.

                                                */s/ J. Michael Huget*
                                                  J. Michael Huget